# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of: )
)
Montel D. Ivory (DOB: 06/28/1992) )
) Case No. 19 MJ-1330
)
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A2.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B2.

The basis for the search under Fed. R. Crim P. 41(c) is:
■ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846; Title 18, United States Code, Sections 1951(a), 924(c), and 922(g).

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Scott Marlow, Special Agent, Drug Enforcement Administration
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: 10/24/19

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin    William E. Duffin, U.S. Magistrate Judge
*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF
## APPLICATIONS FOR SEARCH WARRANTS

I, Scott Marlow, being first duly sworn, hereby depose and state as follows:

### I. INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of applications under Rule 41 of the Federal Rules of Criminal Procedure for search warrants to collect an oral swab or swabs of deoxyribonucleic acid (DNA) from saliva containing epithelial cells from the following individuals, who are presently located in the Eastern District of Wisconsin:

    **A1.**    **Wayne Potts, Jr. (DOB: 05/13/1984)**

    **A2.**    **Montel D. Ivory (DOB: 06/28/1992)**

2. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been so employed since March 2006. Prior to my current assignment, I was employed as a police officer with the West Allis Police Department for approximately nine years.

3. During my tenure as a DEA agent, I have been involved primarily in the investigation of narcotics traffickers operating in Wisconsin and throughout the United States. Based on my training, experience, and participation in drug trafficking investigations and associated financial investigations involving controlled substances, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and elsewhere.

4. I have participated in numerous complex narcotics and firearms investigations which involved violations of state and federal laws, including Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), 843(b), and 846, Title 18, United States Code, Sections 1956 and 1957, Title 18, United States Code, Sections 922(g)(1) and 924(c), and other related offenses.

1

5. I have had both formal training and have participated in numerous complex drug trafficking and firearms investigations. I have worked with informants in the investigation of drug trafficking. I have participated in the application of and execution of numerous search warrants and arrests in which controlled substances and drug paraphernalia were seized.

6. In the course of my experience, I have and continue to be involved in investigations where DNA analysis provided evidence of crimes and of a particular person's participation in a crime, including the packaging and manufacturing of drugs, the control of or nexus to drug premises, and the possession of firearms, ammunition, and firearms accessories.

7. This affidavit is based upon my personal knowledge and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, I refer to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom I have had regular contact regarding this investigation.

8. Because this affidavit is submitted for the limited purpose of securing search warrants, I have not included each and every fact known to me concerning this investigation. I have set forth only facts that I believe are sufficient to establish probable cause.

## II. PROBABLE CAUSE

9. In August 2017, case agents initiated an investigation into the Jimmy BATES Drug Trafficking Organization (DTO). The investigation to date has included traditional law enforcement methods, including but not limited to information from other law enforcement officers, documentary evidence, telephone toll data, cell site records, pen register and trap-and-trace devices, controlled buys of drugs and firearms, arrests of co-conspirators, confidential

2

informants, premises search warrants, public records reviews, physical surveillance, proffer interviews, and target interviews.

10. As a result, case agents learned that Jimmy Bates obtained kilogram amounts of heroin and cocaine from several known and unknown sources of supply and was the leader of a large-scale heroin and cocaine distribution network operating in the Milwaukee metropolitan area. Case agents identified the command and organizational structure of the Bates DTO, including the roles and involvement of Wayne Potts, Jr. and Montel D. Ivory in that organization.

11. On July 2, 2019, a federal grand jury issued a nine-count indictment against 15 members of the Bates DTO in *United States v. Jimmy D. Bates, et al.*, Case No. 19-CR-120. The Grand Jury charged Jimmy Bates, Calvin Nash, Tavaris Cain, Marville Payne, Wayne Potts, Jr., Montel D. Ivory, Dujuan Harrison, Jebar Cannon, Jason Ashley, Anthony Meeks, Paul Parker, Devon Wooten, Dontelle Carr, Shinae Castine, and Marlon D. Pickens with conspiracy to distribute more than 1 kilogram of heroin and more than 5 kilograms of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846. Bates, Potts, Ivory, Harrison, and Meeks were also charged with conspiring to interfere with commerce by robbery, in violation of Title 18, United States Code, Section 1951(a).

12. On May 2, 2019, Potts was arrested after fleeing from the police. He was later arrested on the federal arrest warrant in Case No. 19-CR-120. He remains in custody and is presently incarcerated at the Milwaukee County Jail, located in the Eastern District of Wisconsin.

13. On July 16, 2019, Montel D. Ivory was arrested pursuant to the federal arrest warrant in Case No. 19-CR-120. He remains in custody and is presently incarcerated at the Dodge County Jail, located in the Eastern District of Wisconsin.

3

14. On December 20, 2018, case agents executed a federal search warrant at 3048 North 11th Lane in Milwaukee, Wisconsin, based on information that Potts and Ivory used that residence as a "trap house" for drugs. At the time of execution, Potts and Ivory were not present, but a "Lydell Potts" was there. Case agents recovered a Glock magazine, digital scales, phones, a holster, ammunition, packaging materials, cell phones, Arlo cameras, and a Glock .40 caliber firearm (Serial: EEX966) with a loaded extended magazine.

15. The digital scales, sandwich bag boxes, ammunition box, firearm magazine, and the Glock .40 caliber firearm were swabbed for DNA, and those DNA swabs remain in the custody of the Milwaukee Police Department.

16. That warrant was based upon information provided by multiple confidential informants about Potts and Ivory's roles in the Bates DTO and their connection to that drug house, including two anonymous 911 calls about drug and gun activity at 3048 North 11th Lane.

17. In September 2018, CS #3 identified 3048 North 11th Lane as a drug house utilized by Potts. In December 2018, CS #3, again, identified that house as one of Bates's drug houses and that Potts and Ivory had taken over that location as a drug house. CS #3 stated that he had been in that location on at least six occasions between August 2018 and November 2018. CS #3 indicated that the kitchen was used to package and manufacture cocaine and prepare heroin for distribution. CS #3 had accompanied Bates to that house to deliver cocaine and heroin to and collect money for prior drug sales from Potts and Ivory. CS #3 indicated that he observed firearms inside of the house each time, including an assault rifle, a Tommy gun, a Mac-10, and several handguns. CS #3 stated that he was last in that house after Thanksgiving 2018 and observed Bates drop off heroin and cocaine and pick up money from Potts and Ivory, and that he observed Potts and Ivory armed with handguns and an assault rifle, while cooking crack cocaine and packaging drugs at that location.

4

18. Case agents believe that CS #3 is reliable and credible. First, CS #3 has provided information since February 2018. Second, the information provided by CS #3 is substantially against his penal interests. Third, the information provided by CS #3 is consistent with evidence obtained elsewhere in this investigation where CS #3 was not utilized, and substantial parts of CS #3's information have been corroborated through independent investigation, including information from other sources and law enforcement reporting. CS #3 is cooperating for potential consideration on federal drug trafficking charges. CS #3 has a prior felony conviction for second-degree reckless homicide and a prior misdemeanor conviction for disorderly conduct.

19. On or about September 22, 2018, an anonymous caller called 911 about 3048 North 11th Lane indicating that the house contained guns and drugs. The anonymous caller indicated that he had been there during the day and observed guns and drugs at the location and described being physically assaulted by two individuals there. Through a public database search, case agents linked the caller's phone number to an individual with the last name "Potts," who is a relative or associate of Wayne Potts, Jr., and who had contact with Potts's known phone number at least 87 times between June 2018 and October 2018.

20. On or about December 6, 2018, another anonymous caller with a non-working phone number called 911 to report that the house at 3048 North 11th Lane contained guns and drugs. The anonymous caller indicated that the individuals at 3048 North 11th Lane had committed three homicides and stated that two of the people involved in the homicides are named "Dwayne Potts," believed to refer to Wayne Potts, and "Montay," believed to refer to Montel Ivory. The anonymous caller stated that Potts and Ivory were involved in the death of a woman on 10th Street and Capitol Drive about one to two months prior, and that Potts and Ivory had bragged about the murder.

5

21. Case agents recognized the homicide reference. A review of the Milwaukee Police Department's reports revealed that on October 17, 2018, officers investigated the report of a double shooting that occurred in the early morning hours of October 17, 2018 at 3923 North 10th Street in Milwaukee. That shooting resulted in the deaths of both a man and a woman. Members of the Milwaukee Police Department and the Milwaukee Fire Department responded to a "sick/injured" call at that location. On arrival, officers observed a black male and a black female lying in the alley behind that address. Both victims were dead, and the police later identified both victims. A review of Potts's toll records revealed that, on the night of the homicide, Potts was in contact with the number for Jimmy Bates at least seven times and in contact with the male victim Cecil Warren. The anonymous caller also stressed that there were plenty of guns at the house, and instructed the dispatcher about safely approaching the house using the gangways.

22. Prior to the premises search warrant execution, case agents obtained search warrants for historical cell site information associated with two of Potts's cell phone numbers, which revealed that his phone numbers hit off of cell towers covering 3048 North 11th Lane approximately 1,000 times between September 2018 and October 2018.

23. Case agents conducted surveillance at the address of 3048 North 11th Lane on December 11, 2018 and December 12, 2018 and observed a black Chevrolet Malibu bearing a temporary Wisconsin license plate registered to Montel Lenard-Ivory.

24. A review of Potts's criminal history reveals that he is a convicted felon, including a prior conviction for possession of a firearm as a convicted felon, in violation of Wisconsin Statute 941.29(2)(a) in Milwaukee County Case No. 2007CF002002.

25. A review of Ivory's criminal history also reveals that he is a convicted felon, including a prior conviction for bribery of a public official, in violation of Wisconsin Statute

6

946.10(1) in Milwaukee County Case No. 2012CF005170. (The date of birth in the State of Wisconsin's records is off by exactly one year, but this conviction was confirmed by the U.S. Probation Office's Pretrial Services Report.)

26. Based on my training and experience, I know that a sample of saliva containing epithelial cells may be found in and on a person. Swabbing the inside of a subject's mouth or cheek with a sterile cotton swab and preserving the saliva and cells obtained as a result is a reliable method for collecting a DNA sample. This process is called taking a "buccal swab" or "buccal smear." A case agent trained in how to collect a DNA sample and prevent contamination of the resulting evidence will conduct these searches using sterile swabbing kits for use in collection and preservation.

27. The Drug Enforcement Administration will request the assistance of the Wisconsin Department of Justice's State Crime Laboratory (or another laboratory designated by the DEA) in processing, analyzing, and scientifically testing the saliva samples to obtain a known DNA profile or profiles and to compare those known DNA profiles with the DNA profiles obtained from the evidence recovered during this investigation.

28. I have reason to believe that saliva samples containing epithelial cells taken from Potts and Ivory, together with test results comparing the DNA profiles extracted from such samples with any and all human DNA profiles extracted from items recovered from 3048 North 11th Lane will constitute material evidence.

### III. CONCLUSION

29. Based on the information above, I submit that there is probable cause to believe that by taking oral swabs of the mouths of Wayne Potts, Jr. and Montel D. Ivory, there may now be found DNA that is evidence of the conspiracy to distribute more than 1 kilogram of heroin and

7

more than 5 kilograms of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846, charged in Count One of the Indictment, knowingly possessing firearms in furtherance of the drug trafficking conspiracy, in violation of Title 18, United States Code, Section 924(c), and possession of a firearm by a prohibited person, in violation of Title 18, United States Code, Section 922(g). Therefore, I request that this Court issue search warrants to obtain samples of Potts's DNA from saliva containing epithelial cells and Ivory's DNA from saliva containing epithelial cells for subsequent testing and examination.

## **ATTACHMENT A1**

*Person to be searched*

The person to be searched is Wayne Potts, Jr. (DOB: 05/13/1984).

9

## ATTACHMENT A2

*Person to be searched*

The person to be searched is Montel D. Ivory (DOB: 06/28/1992).

10

## ATTACHMENT B1

*Property to be seized*

The property to be seized is saliva containing epithelial cells by buccal swab.

11

## ATTACHMENT B2

*Property to be seized*

The property to be seized is saliva containing epithelial cells by buccal swab.

12